In the United States Department Court
For the Central Department of Illinois
Springfield Division

| | | |
|---|---|---|
| ASHLEY KONNEKER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-3053-RM-TSH |
| | ) | |
| MACOUPIN COUNTY PUBLIC HEALTH DEPARTMENT, and KENT TARRO, | ) ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Memorandum of Law In Support of Her Motion for Partial Summary Judgment[1]**

### I.  Introduction

Konneker brought this two-count lawsuit against her former employer, the Macoupin County Public Health Department (the "Department") alleging two distinct types of claims.[2]  In her first claim she alleges that her rights under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ( the "FMLA"), were violated.  Her second claim alleges that the Department failed to pay her agreed upon wages in contravention of the Illinois Wage Payment and Collection Act (the "Wage Act").  820 ILCS 115/1 *et seq*.

The FMLA is most widely understood to require that employers provide their employees

---

[1] On July 29, 2019, the Defendants filed a motion for summary judgment (Doc. 15). This pleading is not intended to be a response to that motion.  Indeed, as of the time of filing this pleading the undersigned has not reviewed that pleading and is not aware of the specific arguments that are being advanced.  Konneker will respond to this motion at a later date. Konneker has reviewed the exhibits that were filed with the brief in order to determine whether there were any additional documents that needed to be filed.

[2]   Konneker's claim against Kent Tarro ("Tarro") is limited to the FMLA count.

with a certain amount of leave to take care of medical issues for themselves and their families. There are, however, many additional obligations an employer has under the FMLA. One of these obligations is the requirement that they return an employee to the original position she held before she went on a leave of absence. 29 U.S.C. § 2614(a)(1)(A).

Konneker was employed by the Department as a family nurse practitioner. She had a serious medical issue that necessitated a medical leave of absence in December of 2017. Despite the obligations imposed by the FMLA on the Department, it failed to provide her with a certification outlining her rights and responsibilities under the FMLA. While that itself is a violation of the FMLA, the basis of this current motion is the fact that when she returned from her leave the Department had significantly altered her job responsibilities. Upon her return (1) she was required to obtain a suboxone certificate which would have required her to engage in a different type of medical practice; (2) her hours were changed and she was expected to work on weekends; and (3) was required to request time off for doctor appointments one month before the appointment was to take place. In this case there is no dispute that Konneker went on a leave of absence that was protected by the FMLA and when she returned she was not returned to a substantially equivalent position. The requirement that she obtain a suboxone certificate was particularly troublesome because it altered the very nature of her medical practice. For this reason, summary judgment should be granted in her favor as to this particular question and a finding of FMLA interference should be entered.

The Wage Act requires that employers pay their employees agreed upon wages. 820 ILCS 115/2. At the time she began her employment contract had an agreement with the Department that she would be paid a set wage and that wage would be increased after six months. At the end

of six months Konneker was not given the agreed upon salary increase. The failure of the Department to provide her with this increase constitutes a violation of the Wage Act.

At the conclusion of discovery this Court should enter an order that provides for the following relief:

Konneker is requesting that the Court enter an order that provides the following relief:

1. Enter a finding that the Department and Tarro interfered with her rights under the FMLA by refusing to reinstate her to her former position, or a nearly identical position, once she was to return from FMLA.

2. Enter an order setting a trial as to the issue of damages for the failure of the Department and Tarro to reinstate her former position, or a nearly identical position, once she was to return from the FMLA.

3. Enter an order finding that the Department violated her rights under the Wage Act by failing to pay her the agreed amount once she had been working for it for six months.

4. Enter an order setting a trial on the issue of damages for the violation of her rights under the Wage Act.

5. Set a trial on the remaining FMLA issues.

## II. Statement of Facts[3]

1.    Konneker began working for the Department on December 12, 2016, as a Family Nurse Practitioner (Doc. 6, Answer, ¶13).

2.    Prior to commencing that position, Konneker had obtained a master's degree in nursing (Konneker dep., p. 13).

3.    Konneker then became board certified as a family nurse practitioner in late 2016 (Konneker dep., p. 13-14).

4.    On August 1, 2016, Konneker had been sent a letter that outlines the critical terms and conditions of her employment (Konneker dep. Ex. 3; Konneker dep., p. 35-36).

5.    The August 1, 2016, letter provided that Konneker's immediate supervisor would be Angela Weidner, who was "overseen" by Kent Tarro. Tarro was the author of the letter (Konneker dep. Ex. 3; Konneker dep., p. 35-36).

6.    The August 1, 2016, letter also provided for the compensation that she was to be paid. The letter provided that her initial salary would be $84,000 per year (Konneker dep. Ex. 3).

7.    The August 1, 2016, letter also provided as follows:

> Upon successful completion of your initial six month probationary period, your salary will increase to $87,360 ($44.21/hr). Upon successful completion of your annual appraisal (first 12 months of employment) your salary will increase to $90,854/yr ($45.97 per hour).

(Konneker dep. Ex. 3; Doc. 6, Answer, ¶ 29).

---

[3] The Defendants filed several depositions and other evidentiary material along with their motion for summary judgment (Docs. 15-1 – 15-17). In an effort to avoid redundancy, Konneker is not filing any of these documents a second time. All references to the documents are a reference to those documents filed by the Defendants.

8.  At the time that she commenced her employment she was given a document that was titled as "scope of practice" (Konneker dep. Ex. 5; Konneker dep., p. 41-42).

9.  The scope of practice document provided that her responsibilities were to be those of a nurse practitioner (Konneker dep. Ex. 5).

10. The scope of practice document, in addition to being signed by Konneker, was also signed by a physician, Dr. Kathryn Followell (Konneker dep., Ex. 5).

11. Illinois law governs the scope of practice of an advanced practice registered nurse. 225 ILCS 65/65-30.

12. As it relates to a nurse practitioner, the Illinois Nurse Practice Act provides:

> The clinical experience must be in the advanced practice registered nurse's area of certification. The clinical experience shall be in collaboration with a physician or physicians. Completion of the clinical experience must be attested to by the collaborating physician or physicians and the advanced practice registered nurse.
> 225 ILCS 65/65-43(b).

13. At the time she commenced her employment Konneker was given a policy manual that outlined the policies of the Department (Konneker dep., p. 49-50; Konneker dep. Ex. 7).

14. The policy manual provides that each employee will work a "probationary period" of 6 months (Konneker dep. Ex. 7, p. 7-8).

15. Konneker's six month anniversary would have been in June of 2017 (Konneker dep., p. 38).

16. In July of 2017 Konneker notified the Department that she was pregnant (Doc. 6, Answer, ¶ 13).

17. The Department did not increase Konneker's salary after she had been there for six months (Tarro dep. Ex. 16, Department interrogatory answers, ¶ 8, 9).

18. Konneker did ask her supervisor about her increase in pay and was told that Tarro would get around to it (Konneker dep., p. 53).

19. On December 6, 2017, Konneker notified Tarro that she needed to take a protected FMLA leave (Doc. 6, Answer ¶ 17).

20. Despite the law requiring that it do so, no one from the Department provided Konneker with an eligibility notice or a rights and responsibilities notice at the time of her request (Doc. 6, Answer ¶ 18).

21. On December 8, 2017, Konneker was told by arro that her employment was being terminated (Doc. 6, Answer ¶ 19; Konneker dep. Ex. 17).

22. Konneker appealed her termination to the Macoupin County Board of Health (Tarro dep. Ex. 16, Department interrogatory answers ¶ 4).

23. Konneker's employment was reinstated after her appeal to the Board of Health (Doc. 6, Answer ¶ 20).

24. The first time that Konneker received a performance evaluation of any type was on January 16, 2018. That evaluation was performed by Tarro and not her immediate supervisor, Angela Weidner (Doc. 6, Answer ¶ 21; Konneker dep., p. 137; Konneker dep. Ex. 19[4]).

25. On January 16, 2018, Konneker met with Tarro. During the course of that meeting he advised her that if she returned to work she would be placed on probation (Doc. 6, Answer, ¶ 21).

26. During the January 16, 2018, Konneker was provided with a document from

---

[4] Konneker – along with her supervisor, Angela Weidner – disputes the conclusions of the evaluation (Konneker dep., p. 146). Given that she is not moving for summary judgment as to the evaluation, it is not necessary to outline those disputes here.

Tarro that modified the terms and conditions of her employment (Konneker dep., p. 142; Konneker dep. Ex. 20).

27. According to the probation document that she received, Konneker's job duties were modified significantly (Konneker dep. Ex. 20). The modifications included changes in her work location, her hours that she was to work, her job responsibilities, and a requirement that she get a suboxone waiver (Konneker dep. Ex. 20).

28. Konneker was told that if she did not comply with all of the requirements of the probation document her employment would be terminated immediately (Konneker dep. Ex. 39, Konneker interrogatory answers, ¶ 18).

29. On March 5, 2018, Konneker notified the Department that she was resigning her position of employment because she was not being reinstated to the position she held before her leave of absence (Konneker dep. Ex. 35).

III.  Argument

A. **Standards for a Rule 56 motion seeking summary judgment**

Under Fed.R.Civ.P. 56(c), in order to prevail on a motion for summary judgment, Konneker must first establish that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548(1986). Material facts are those facts that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" only if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Once the moving party meets this initial burden, a nonmoving party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial, and may not rely on allegations or denials in the nonmoving party's pleadings. Fed.R.Civ.P. 56(e). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

B. **The FMLA requires that an employer reinstate an employee to her same (or nearly identical) position when they return to work from a protected leave. The Department was unwilling to do this and this constitutes interference with her rights under the FMLA.**

In *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997), the Seventh

Circuit explained how FMLA claims differ from traditional employment discrimination claims:

> The question in a discrimination case is whether the employer treated one employee worse than another on account of something (race, religion, sex, age, etc.) that a statute makes irrelevant. A firm may treat all employees equally poorly without discriminating. A statute such as the FMLA, however, creates substantive rights. A firm must honor statutory entitlements; when one employee sues, the firm may not defend by saying that it treated all employees identically. The FMLA requires an employer to accommodate rather than ignore particular circumstances. In this respect the FMLA is like the National Labor Relations Act, the Fair Labor Standards Act, and the Employee Retirement and Income Security Act, . . .

Konneker's claims are that her FMLA rights were violated in a number of different ways that would constitute both interference and also retaliation. After discovery there are disputes of fact as to a number of points related to her FMLA claim that are simply not proper for summary judgment. There is one point, however, where there is no dispute and Konneker is clearly entitled to judgment.[5] Upon concluding her leave Konneker was entitled to be reinstated into the same job she previously had and the Department did not do this. This constitutes a violation of her substantive rights and constitutes interference under the FMLA.

The FMLA prevents an employer from "interfer[ing] with, restrain[ing], or deny[ing] the

---

[5] Konneker contends that the decision to terminate her employment constituted FMLA retaliation and interference, she claims that disciplining her constitute both FMLA retaliation and interference, her performance evaluation was both retaliatory and interfered with her rights, and she claims that the Department failed to provide her with the proper documentation when she was seeking a leave of absence which also interfered with her rights under the FMLA. Resolution of these claims, however, is not possible at summary judgment because they involve disputes of fact. The are material disputes surrounding the issue of whether Konneker actually engaged in any misconduct and what was her performance. These disputes must be resolved by a finder of fact. The issue of whether she was reinstated to the same or "substantially equivalent" position, however, is not a matter of factual dispute and can be resolved at summary judgment.

exercise of or attempt to exercise" rights provided in the FMLA. 29 U.S.C. § 2615(a)(1). To establish an FMLA interference claim, "an employee must show that: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006); *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). Here the first four elements are clearly not in dispute. *Goelzer* at 993. (Explaining that the first four elements are satisfied when a plaintiff has actually taken a leave of absence that was approved by her employer). For purposes of this motion for partial summary judgment, the question is whether the Department denied her a FMLA benefit to which she was entitled.

The FMLA mandates that employers provide eligible employees with certain benefits under the FMLA. The granting of leave, of course, is the primary benefit, however, it is not the only one. Indeed, such a benefit would ring hollow if an employer did not allow an employee to return to work once the medical condition no longer necessitated a leave or if an employer modified her job duties during the leave. While this proposition might seem axiomatic, the FMLA specifically provides that an employee on a FMLA leave is "to be restored by the employer to the position of employment held by the employee when the leave commenced" 29 U.S.C. § 2614(a)(1)(A), or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B); C.F.R. § 825.215(a).[6]

The United States Department of Labor has crafted detailed regulations that dictate

---

[6] In enacting the FMLA, Congress ordered the Secretary of Labor to develop regulations "necessary to carry out" its terms. 29 U.S.C. § 2654.

exactly how an employer is to treat different types of medical leaves of absence.[7] Any violation of the FMLA or of the regulations promulgated by the Secretary "constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA]." 29 C.F.R. § 825.220(b); see also 29 U.S.C. §2615(a)(1).

   i.   **The FMLA requires that an employee be reinstated to the same or a nearly identical position**.

The FMLA does not simply require that an employee be reinstated at the conclusion of her leave.  An employer must put someone back into her same job without any modifications to the job. The regulations explain that an employer must bring someone back in an "equivalent position."  The term is defined as follows:

> An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority. 29 C.F.R. § 825.215.

The regulations also explain what is meant by the same or substantially similar working conditions:

> (e) Equivalent terms and conditions of employment. An equivalent position must have substantially similar duties, conditions, responsibilities, privileges and status as the employee's original position.
>
> > (1) The employee must be reinstated to the same or a geographically proximate worksite (i.e., one that does not involve a significant increase in commuting time or distance) from where the employee had previously been

---

[7] These regulations were implemented and effective as of November 17, 2008.  Family and Medical Leave Act Final Rules, 73 Fed.Reg. 67934 (Nov. 17, 2008).

employed. If the employee's original worksite has been closed, the employee is entitled to the same rights as if the employee had not been on leave when the worksite closed. For example, if an employer transfers all employees from a closed worksite to a new worksite in a different city, the employee on leave is also entitled to transfer under the same conditions as if he or she had continued to be employed.

(2) The employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule.

(3) The employee must have the same or an equivalent opportunity for bonuses, profit-sharing, and other similar discretionary and non-discretionary payments.

(4) FMLA does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule, or position which better suits the employee's personal needs on return from leave, or to offer a promotion to a better position. However, an employee cannot be induced by the employer to accept a different position against the employee's wishes.

### ii.  Konneker was not reinstated to an equivalent position

While the obligations under the FMLA are clear, the Department and Tarro made it clear that when she returned her job duties would be markedly different.  There are three critical areas in which her job duties were changed from when she went on her FMLA leave to what she was told her job would be when she returned: (1) she was required to obtain a suboxone certificate which would have required her to engage in a different type of medical practice; (2) her hours were changed and she was expected to work on weekends; and (3) was required to request time off for doctor appointments one month before the appointment was to take place.

One of the requirements of her probation was that she "[pursue] and receive the DEA DATA 2000 (Suboxone) waiver to work with the Opiate Addiction and Treatment Recovery Program" (Konneker dep. Ex. 20). A suboxone waiver would allow her to prescribe medications and provide therapy to opiate addicted patients. This, of course, is quite different than the job she had been performing. Her job duties dealt with primarily women and children and dealing with their primary health care concerns. Opioid addiction is a specialized area in which she was never trained and, when she was hired, there was never any requirement that she work in that area.

Konneker testified that the problem with her getting the suboxone license is that it would require her to work with a completely different patient population (Konneker dep., p. 64). When she was hired she was hired to be a family nurse practitioner (Fact 1). Her practice dealt almost exclusively with women and children and dealing with the WIC program (Konneker dep., p. 23). Under the Nurse Practice Act a nurse practitioner can only work in the area they are certified (Fact 12). Konneker was certified as a family nurse practitioner (Fact 3). She had no experience or training – not to mention a desire – working with an addicted population (Konneker dep., p. 65; ". . . it's a specialty I have no experience in.").

Konneker's concerns that she was being required to practice outside of her practice area were not limited to just her. Angela Weidner explained that suboxone is a drug that is used to treat individuals who have opiate addictions (Weidner dep., p. 55-56). She went on to explain that the treatment of this population was very difficult and that it was a completely different area of practice than working with women and children (Weidner dep., p. 56). Ms. Weidner also explained that different practitioners don't feel comfortable working with suboxone and, if they

don't, they shouldn't (Weidner dep., p. 203).

Another problem with the suboxone license is the amount of work that would go into it. The courses necessary to obtain the waiver required 80 hours of online study (Weidner dep., p. 202). The terms of her return from FMLA required that she complete this within 3 months while, at the same time, working a full schedule. This requirement that she obtain the certificate modified her job duties because it would have required her to work extra hours – a direct violation of the regulations.

The second alteration to her employment dealt with the hours and shift that she was supposed to work. As noted above, the regulations require that an employee be returned to the same shift. The probation document provided that her working schedule would be: Monday from 8:30 a.m. - 6:30 p.m.; Tuesday from 7:30 a.m. - 6:00 p.m.; Off on Wednesday; Thursday from 8:30 a.m. - 7:00 p.m.; and Friday from 7:30 until 4:00 p.m. Additionally, she was told that she would work Wednesdays if needed and that she would work weekends "as scheduled" (Konneker dep. Ex. 20). Prior to her leave her hours had been 8:00 a.m. until 4:00 p.m. on Monday, Tuesday, and Thursday; 8:00 a.m. until 7:00 p.m. on Wednesday; and 8:00 a.m. until 2:00 p.m. on Friday (Konneker dep., p. 18; 217-218). When the probation document was provided to her Konneker explained that she was not able to work so many late evenings (Konneker dep, p. 219). She was responsible for raising two young children (Konneker dep., p. 9).

In addition to changing the times that she worked, the requirement that she work weekends and Wednesday when the Department dictated was another significant alteration to her job duties. Prior to taking her leave of absence she worked full-time, which meant 38 hours per week (Konneker dep. Ex. 3). She also did not work weekends and only worked, at most, 5

days per week (Konneker dep. Ex. 3).

The third modification was that she was required to obtain permission to take time off for a doctor's appointment at least 30 days in advance (Konneker dep. Ex. 20). This deviated from the office policy that merely requires that an employee must notify a supervisor in advance "when possible" and, if not possible, ½ hour before the start of a shift (Konneker dep. Ex. 7, p. 24).

The modifications to Konneker's job duties and the alterations of the terms and conditions of her employment made her FMLA leave illusory and by taking these actions against her the Department and Tarro violated the FMLA. This Court should enter a summary finding that by altering the terms and conditions of her employment the Department and Tarro interfered with her rights under the FMLA.

**C.   In her Wage Act claim Konneker contends that she had an agreed upon wage increase that was to be paid to her. There is no dispute that she was never paid the increase and the only issue is one of contract interpretation. Given that this is the issue, determination of this issue involves no dispute of material facts and it is appropriate that it be resolved at summary judgment.**

The standards of Fed.R.Civ.P. 56 are well known. Summary judgment should be granted if there is no genuine issue of material fact and the record demonstrates that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Hukic v. Aurora Loan Services*, 588 F.3d 420, 432 (7th Cir. 2009).

Konneker's Wage Act claim is particularly ripe for determination through summary judgment. There is no dispute as to whether Konneker's salary was ever increased. The only issue is whether actually receiving a satisfactory performance evaluation was a condition precedent to receiving a raise. This question is one of contract interpretation and can be answered solely by reviewing the terms of the employment agreement and, to a certain extent,

the personnel policies and procedures that were given to Konneker. Illinois law is clear that "[w]here only the construction of a contract is at issue, the legal effect and interpretation of the contract is a question of law, and summary judgment is proper." *Kennedy, Ryan, Monigal & Associates, Inc. v. Watkins*, 242 Ill.App.3d 289, 295, 182 Ill.Dec. 391, 609 N.E.2d 925, 928 (1993). *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 483, 903 N.E.2d 422, 426–27 (1st Dist. 2009).

The Wage Act defines "wages" to be "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. Here there is no dispute as to the wages that were to be paid. The initial agreement between he parties provided that she was to be paid an initial salary of $84,000.00/yr.($42.51/hr.)(Fact 7). The agreement then provided that "[u]pon successful completion of your initial six month probationary period, your salary will increase to $87,360.00 ($44.21/hr.). Upon successful completion of your annual appraisal (first 12 months of employment) your salary will increase to $90,854/yr. ($45.97/hr.)(Fact 7).

In a claim under the Wage Act the Illinois Courts apply the traditional rule that any ambiguities in a contract are resolved against the drafter of the contract. *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 484, 903 N.E.2d 422, 427 (1st Dist. 2009). Here, the terms of her employment were clear that she was to receive a salary increase after six months. It is undisputed that this was not paid. For this reason there are no material disputes that warrant a trial on this issue and Konneker is entitled to summary judgment.

## IV. Conclusion

At the close of discovery there are material disputes that preclude the entry of summary judgment as to all issues. That having been said, it is clear that Konneker is entitled to summary judgment as to two different issues. By significantly modifying her job responsibilities and the terms and conditions of her employment the Department and Tarro interfered with her rights under the FMLA. Second, the Department failed to pay Konneker her agreed upon wage. This constitutes a violation of her rights under the Wage Act and she is entitled to judgment as to this issue.

This Court should enter an order that provides the following relief:

1. Enter a finding that the Department and Tarro interfered with her rights under the FMLA by refusing to reinstate her to her former position, or a nearly identical position, once she was to return from FMLA.

2. Enter an order setting a trial as to the issue of damages for the failure of the Department and Tarro to reinstate her former position, or a nearly identical position, once she was to return from the FMLA.

3. Enter an order finding that the Department violated her rights under the Wage Act by failing to pay her the agreed amount once she had been working for it for six months.

4. Enter an order setting a trial on the issue of damages for the violation of her rights under the Wage Act.

5. Set a trial on the remaining FMLA issues.

Ashley Konneker

/s/ John A. Baker
John A. Baker
BAKER, BAKER & KRAJEWSKI, LLC
415 South Seventh Street
Springfield, IL 62701
(217) 522-3445
(217) 522-8234 (Fax)
jab@bbklegal.com

## Certificate of Service

This document was filed by utilizing this Court's ECF system.  A copy will automatically be sent to all counsel or record.  No copies have been served via any alternative means.

Ashley Konneker

/s/ John A. Baker
John A. Baker
BAKER, BAKER & KRAJEWSKI, LLC
415 South Seventh Street
Springfield, IL 62701
(217) 522-3445
(217) 522-8234 (Fax)
jab@bbklegal.com